UNITED STATES DISTRICT COURT
FOR THE SOUTHERN TEXAS DISTRICT

| | |
|---|---|
| Noemy Elizabeth Membreño Peralta, <br><br> Petitioner, <br><br> vs. <br><br> Guadalupe del Carmen Escobar Garay, <br><br> Respondent. | CIVIL ACTION: _____ |

**VERIFIED PETITION FOR RETURN OF CHILDREN TO PETITIONER AND PETITION FOR IMMEDIATE ISSUANCE OF SHOW CAUSE ORDER TO RESPONDENT**

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague On October 25, 1980; International Child Abduction Remedies Act, 42 U.S.C. 11601,** *et seq.*

I.      PREAMBLE

1.      This Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague

---

[1] T.I.A.S. No. 11,670, at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986).

Convention" or "Convention"), and the International Child Abduction Remedies Act[2] (hereinafter "ICARA"). The Convention came into effect in the United States of America on July 1, 1988 and was also ratified between the United States of America and the El Salvador. See *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1229 (2014) ("The United States ratified the Hague Convention in 1988, and Congress implemented the Convention that same year through the International Child Abduction Remedies Act (ICARA). 102 Stat. 437, 42 U.S.C. §§ 11601–11610 [22 U.S.C. § 9901 *et seq.*]."). As of June 1, 2007, El Salvador also is a signatory to the Convention.

    2.    The objects of the Convention are as follows: (1) to ensure the immediate return of a child wrongfully removed or detained unlawfully in any Contracting State; and (2) to ensure that indeed the rights of custody and of access under the law of a Contracting State in the other Contracting States. Convention, Article 1.[3]

---

[2] 42 U.S.C. 11601 *et seq*. (1995). ICARA was created to deal with the sudden abduction of children and to allow a petitioner to assert his or her rights in exigent circumstances. *See Distler v. Distler*, 26 F. Supp. 2d 723, 727 (D.N.J. 1998).

[3] The Convention has "two primary objections." *Lozano*, 134 S. Ct. at 1228-29. First, its "'central operating feature,'" *id.* (quoting *Abbott v. Abbott*, 560 U.S. 1, 9 (2010)), is "'to secure the prompt return of children wrongfully removed to or retained in any Contracting State.'" *Id.* (quoting Hague Convention Art. 1). The second is "'to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" *Id.* (quoting Hague Convention Art. 1). Pursuant to Article 12 of the Convention, "when a court receives a petition for return within one year after the child's wrongful removal, the court 'shall order the return of the child forthwith.'" *Id.* As has been stated by other courts addressing Hague cases, the Convention therefore authorizes a federal district court to determine the merits of the *abduction claim* but *does not* allow it to consider the merits of any underlying custody dispute. *Morris v. Morris*, 55 F. Supp. 2d 1156, 1160 (D. Colo. 1999) (recognizing that "[p]ursuant to Article 19 of the Convention, [this Court has] no power to pass on the merits of custody"); *see also Currier v. Currier*, 845 F. Supp. 916 (D. N.H. 1994); *Meredith v. Meredith*, 759 F. Supp. 1432, 1434 (D. Ariz. 1991). The court's role is not to make traditional custody decisions but to determine in what *jurisdiction* the child should be physically located so that the proper jurisdiction can make those custody decisions. *Loos v. Manuel*, 651 A. 2d 1077 (N.J. Super. Ct. Ch. Div. 1994).

## II. JURISDICTION

3. This Court has jurisdiction pursuant to 42 U.S.C. § 11603 (1995) [4] and because this case involves the removal and retention of a minor below the age of sixteen years of her residence in El Salvador to the United States of America.[5]

## III. STATUS OF THE PETITIONER AND CHILD

4. Petitioner, Noemy Elizabeth Membreño Peralta ("Peralta"), the mother, and her husband, Garay ("Garay"), are the parents of the minor child G.M. Until March 14, 2016, G.M. lived with her mother, Peralta, at 9 ½ Old Road to Las Casitas, Zacatecoluca, San Salvador, El Salvador.

5. G.M. is now 10 years old. Attached as **"Exhibit A"** is a copy of her birth certificate. The Convention applies to cases where a child under the age of sixteen (16) years has been removed or retained away from habitual residence[6] in violation of custody rights of an applicant that the petitioner in this case, Peralta, had been practicing at the time of the wrongful retention[7] of her daughter.

---

[4] A court considering an ICARA petition has jurisdiction to decide the merits only of the wrongful removal claim, not of any underlying custody dispute. The Hague Convention is intended to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court. *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) (citations omitted).

[5] *Toren v. Toren*, 191 F. 3d 23, 27 (1st Cir. 1999).

[6] Courts in both the United States and foreign jurisdictions have defined habitual residence as the place where [the child] has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose for the child's perspective." *Pesin v. Rodriguez*, 77 F. Supp. 2d 1277, 1284 (S.D. Fl. 1999) (citations omitted) *aff'd*, *Pesin v. Rodriguez*, 244 F.3d 1250 (11th Cir. 2001); *Morris* at 1161 ("the law requires [the Court] to focus on the child in determining habitual residence"); *see also In re Robinson*, 983 F. Supp. 1339, 1341-42 (D. Colo. 1997). "A determination of whether any particular place satisfies this standard must focus on the child and consists of an analysis of the child's circumstances in that place and the parents' present, shared intentions regarding their child's presence there." *Id.* (citing *Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995)); *see also Koc v. Koc*, 181 F. Supp. 2d 136, 152-53 (E.D.N.Y. 2001) (other factors considered by courts in determining habitual residence are the age of the child, the stability of the child's residence in the new environment, whether the child attends school or day care regularly, the stability of the mother's employment, and whether the child has friends and relatives in the new area.).

[7] "Article 3 of The Hague Convention provides that the removal or retention of a child is wrongful where it violates the custody rights of another person that were actually being exercised at the time of the removal or retention or would have been exercised but for the removal or retention." *Lops* 140 F.3d at 935-936 ("[t]he removal of a child from the country of his or her habitual residence is 'wrongful' under The Hague Convention if a person in that country

6. At the time of the wrongful removal and retention of G.M. (as specifically set forth in Part IV below), Peralta was exercising rights of custody within the meaning of Articles 3 and 5 of the Convention,[8] in that she is the mother of G.M. and has exercised the rights of custody over her since she was born. Furthermore, G.M. had her habitual residence in El Salvador, in the sense of Article 3 of the Convention to their unjust retention by Guadalupe del Carmen Escobar Garay ("Guadalupe" or "Respondent") in United States on approximately April 26, 2016.

7. Peralta has requested the return of G.M. to El Salvador. Her Request for Return is attached hereto as **Exhibit "C."**[9] The Request for Return has been filed through the El Salvador Central Authority and the Central Authority of the United States of America under the Convention. See also miscellaneous related documents concerning the parent and child attached hereto as **"Exhibit D."**

### IV. UNFAIR WITHHOLDING OF THE CHILD BY THE RESPONDENT

8. Peralta has custody rights under the law of El Salvador pursuant to, *inter alia*, Articles 206, 211, 216 of the Family Code of El Salvador; 9, 78, 43, 44, 79 and 80 of the Code for System of Protection and Fundamental Rights of Boys, Girls and Adolescents of El Salvador, a copy of which is attached hereto as **Exhibit "B."** Articles 206, 211 and 216 of the Family Code of El Salvador entrusts both parents with the welfare, care and education of their children. In addition, Article 44 of the law on Comprehensive Protection of Children and Adolescents establishes that if

---

is, or would otherwise be, exercising custody rights to the child under that country's law at the moment of removal."); *see Prevot v. Prevot*, 59 F.3d 556 (6th Cir. 1995); Convention, art. 3.

[8] The issue of "custody" must be addressed under the Dominican Republican law. *Pesin*, 77 F. Supp. 2d at 1284; *see also Whallon v. Lynn*, 230 F.3d 450 (1st Cir. 2000); *Ohlander v. Larson*, 114 F.3d 1531, 1541 (10th Cir. 1997) (stating that the Convention was meant, in part, to lend priority to the custody determination hailing from the child's state of habitual residence. Pursuant to Article 14 of the Convention, this Court "may take notice directly of the law of . . . the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law. . . .") *See also* Fed. R. Civ. P. 44.1.

[9] Given the urgency of this Hague Convention Petition, no authentication of any documents or information included with the Petition is required. 42 U.S.C. § 11605 (1995).

children are traveling with only one parent or person other than them, the consent of the other parent is required. *See id.* The continuing wrongful retention of G.M. is, therefore, a violation of the law of El Salvador within the meaning of Articles 3 and 5 of the Convention as Respondent del Carmen Escobar Garay Guadalupe has withheld it unduly in the United States of America.

9. During this time, Peralta only has sometimes been able to speak with her daughter, who is controlled by Guadalupe, so she knows very little about her daughter. As a result, Peralta has no idea how her daughter is doing emotionally or physically.

10. G.M.'s parents (Peralta and Garay) never possessed the shared parental intent to relocate G.M. from her habitual place of residence in El Salvador to the United States.

11. G.M.'s entire life is centered in El Salvador. That is where G.M. was born, raised, and has spent most of her life. In addition, it is where G.M. attended school until the end of the 2015-2016 school year, and is where her family and childhood friends live. And, it is where her mother, Peralta, father, Garay and her grandparents live.

12. In 2004, Peralta and Garay were married in El Salvador. Three years later, on January 14, 2007, G.M. was born.

13. At all times, Peralta exercised parental rights over G.M.

14. On May 18, 2016, Peralta learned that Garay intended to travel to the United States of America and to take G.M. with him.

15. Peralta allowed the girl to travel with her father to the United States with the express understanding that G.M. would travel later and that <u>they would meet there.</u> But her husband and G.M. were detained for travelling illegally. G.M. was transferred to a hostel. Peralta sent a temporary authorization to Respondent Guadalupe de el Carmen Escobar Garay so that G.M. could be released to her while Garay resolved their immigration status. However, Garay was deported to

El Salvador and Peralta was already in El Salvador. So, Peralta asked Guadalupe to return G.M. to El Salvador. Guadalupe has refused requests to return G.M. to El Salvador.

16. Importantly, no there no intention or agreement was shared by Peralta, Garay, or Respondent that G.M. would have her usual place of residence in United States.

17. Notwithstanding this, but to the contrary, Respondent has informed Peralta that she will *not* honor Peralta's expressed wishes and allow G.M. to be returned to her parents in El Salvador. Rather, Respondent plans to keep G.M. in the United States permanently.

18. To Peralta's knowledge, G.M. does not possess legal authorization to permanently remain in the United States.

## V. ATTORNEYS' FEES AND COSTS INCLUDING TRANSPORTATION EXPENSES PURSUANT TO CONVENTION ARTICLE 26 AND U.S.C. 11607

19. Peralta has incurred expenses as a result of Respondent's wrongful retention of G.M. Peralta will submit a copy of all expenditures as soon as practicable and will amend these costs, from time to time, according to proof and in light of further expenditures required because of this wrongful removal and retention

20. Peralta respectfully requests that this Court award all legal costs and fees incurred to date as required by 42 U.S.C. 11607, reserving jurisdiction over further expenses.

## VI. DECLARATION PURSUANT TO UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT

21. The details regarding G.M. required to be provided under the UCCJEA are as follows:

   a. The present forced location of G.M. is believed to be 2610 Steelhead Drive, Houston, TX 77045.

   b. In the last five years, G.M. has resided at the following address: 9 ½ Old Road to Las Casitas, Zacatecoluca, San Salvador, El Salvador.

    c.    Peralta does not have information of any custody proceeding concerning her daughter currently pending in any other court of this or any other state.

    d.    Peralta does not know of any person or institution not a party to the proceedings who has physical custody of the child or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with, the child.

## VII.    PROVISIONAL REMEDIES[10]

22.    Peralta requests the Court to issue an Order to Show Cause and to direct that the Order be served immediately by the United States Marshals on Respondent at 2610 Steelhead Dr., Houston Texas 77045, and that she be brought to this Court with G.M.'s passport, forthwith.[11]

23.    Pending further hearing in this Court, it is requested that this Court issue an immediate order prohibiting the removal of G.M. from the jurisdiction of this Court, taking into safe-keeping all of the child's travel documents and setting an expedited hearing on the Petition for the Return of the Child to Petitioner.[12]

## VIII.    REQUESTED RELIEF

**WHEREFORE**, Noemy Elizabeth Membreño Peralta respectfully requests the following relief:

    a.    An Order directing a prompt return of G.M., along with her personal belongings, to her habitual residence in El Salvador;

    b.    The issuance of an immediate Order directing that G.M.'s passport, together with Respondent be brought into this Court by any United States Marshall, federal officer, or police officer;

---

[10] This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." 42 U.S.C. 11604 (1995).

[11] Such an approach is consistent with the approach of other district courts faced with equivalent concerns regarding the flight of a respondent following service of a petition for return under the Convention. *See Fawcett v. McRoberts*, 168 F. Supp. 2d 595, 597 (W.D. Va. 2001), *rev'd on other grounds*, 326 F.3d 491 (4th Cir.).

[12] Such a Petition may also be treated as an application for a Writ of Habeas Corpus itself. *Zajaczkowski v. Zajaczkowska*, 932 F. Supp. 128, 132 (D. Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus . . . pursuant to 28 U.S.C.A. § 2243"); *see also In re McCullough*, 4 F. Supp. 2d 411 (1998).

- c. The issuance of an immediate Order prohibiting the removal of G.M. from the jurisdiction of this Court;

- d. An Order commanding Guadalupe del Carmen Escobar Garay, Respondent, to appear in this Court to show cause why G.M. has been kept from her habitual place of residence, El Salvador;

- e. An Order directing Respondent to pay Noemy Elizabeth Membreño Peralta's legal costs and fees;

- f. An Order enjoining Respondent from pursuing further custody proceedings regarding G.M. and/or from seeking to enforce any order related to the custody of G.M; and

- g. Any such further relief as justice and its cause may require or the Court deems appropriate.

## IX. NOTICE OF HEARING

Pursuant to 42 U.S.C. § 11603(c), Respondent will be given notice of any hearing in accordance with C.G.S.A. §46b-115g and §46b-115o of the UCCJEA.[13]

Respectfully submitted,

s / *Michael E. Clark* _____
Michael E. Clark
Cameron J. Asby
DUANE MORRIS LLP
1330 post Oak Blvd., Suite 800
Houston, TX 77056
Tel: 713.402.3900
Fax: 713-583-9182
meclark@duanemorris.com
CJAsby@duanemorris.com

---

[13] The Convention itself does not specify any specific notice requirements. ICARA provides that notice be given in accordance with the applicable law governing notice in interstate child custody proceedings. 42 U.S.C. § 11603(c). In the United States, the Parental Kidnapping Prevention Act ("PKPA") and the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") govern notice in interstate child custody proceedings. *Klam v. Klam*, 797 F. Supp. 202, 205 (E.D.N.Y. 1992). The UCCJEA and Part (e) of the PKPA provide that reasonable notice and opportunity to be heard must be given to all parties before a custody determination is made. The UCCJEA further provides that notice shall be given in a manner reasonably calculated to give actual notice. Furthermore, in cases where flight of a respondent is at issue, federal courts have allowed substituted service in any manner reasonably effective to give the respondent notice of the suit. *Ingram v. Ingram*, 463 So. 2d 932, 936 (La. App. 1985).